HEARD NOVEMBER TERM, 1873.

## BACHMAN *vs.* SULZBACHER.

Where two executions are levied by the Sheriff on personal property on the same day, but at different hours of the day, the first levied is not entitled to preference, but the liens of both attach as if levied at the same instant of time.

The proceeds of the sale, if insufficient to satisfy both executions, must be distributed *pro rata* between them.

BEFORE CARPENTER, J., AT CHAMBERS, COLUMBIA, JULY 3, 1873.

On February 15, 1873, Simon S. Bachman entered in the office of Jesse E. Dent, Sheriff of Richland County, an execution against Jacob Sulzbacher for $1,076.85, and on the same day, at 11½ o'clock, A. M., the Sheriff levied the execution on the personal property of the defendant therein. On the same day, at 1:25 o'clock P. M., Simon Benary entered in the same office another execution against Sulzbacher for $2,530.55, which the Sheriff levied on the same property at the instant it was entered. The property was afterwards sold by the Sheriff, and the net proceeds amounted to $1,334.49.

This was a rule, on behalf of Bachman, against the Sheriff to show cause why he had refused to apply the proceeds of the sale to the satisfaction of his (Bachman's) execution. The Sheriff made a return, in which he stated the facts and submitted the questions of law to the Court.

After argument His Honor filed a judgment as follows:

CARPENTER, J. In this case a rule was issued requiring the Sheriff of Richland County to show cause why he should not pay to the plaintiff the moneys in his hands, arising from the levy and sale of the property of the defendant by virtue of the judgment and execution herein. The rule shows that the levy, under this execution, was made on the 15th day of February, 1873, at 11½ o'clock A. M., and that, on the same day, at 1:25 o'clock, P. M., a levy was made upon the same property, under an execution against the same defendant at the suit of one Simon Benary; that the proceeds of sale are insufficient to satisfy both executions, and that, in obedience to a notice served upon him by the attorneys of Simon Benary, he holds the fund subject to the order of the Court.

The facts of the return are admitted, and the question is presented whether, in the case of two or more levies made upon the same day, that first in time should take priority of lien. Argument was heard thereon, at Chambers, on the 3d day of July, Mr. LeConte for the rule and Mr. Samuel W. Melton for the respondent. In general the law does not regard fractions of a day, and, heretofore, in this State, judgments and executions lodged on the same day have uniformly taken the same rank without regard to the precise hour of the lodgment. In *Ex Parte Jacob D. Stagg*, 1 N. & McC., 405, it is said : " The general rule that the law will not allow fractions of a day, it is believed, will be found upon examination to apply rather to legal proceedings or to legal diligence than to questions of right unconnected with them. Thus, when two judgments or executions are of the same day, neither shall have the preference, (*Wakeman* vs. *Haskin*, 11 John., 228; *Welsh* vs. *Murray*, 4 Dallas, 320, Note 2,) because, in natural justice, neither party should be preferred if equal diligence has been used on both sides ; the law will not impute negligence to him who is only the fraction of a day, perhaps a few hours or minutes, later than the other." It was contended that this rule would not apply, because the lien is now created, not by judgment, but by actual levy on the property of the defendant, and in analogy to the law of attachment the fraction of a day should be observed. I do not see, however, that the character of the Act by which the lien is created, whether by delivery, lodgment, levy or otherwise, can operate to take the case out of the operation of the rule. If it had been designed thus to depart from a long and clearly established practice, the statute should have so provided in terms. " When fundamental principles are overthrown—when the general system of laws is departed from—the legislative intention must be expressed with irresistible clearness to induce a Court of justice to suppose a design to effect such objects."—2 Cranch, 390. But, upon this point, the statute is silent. But, whilst the practice has been derived from and must be referred to the maxim of the common law, it will be observed that the law of attachment, existing under the custom of London, and having its origin rather in the code of civil law, is anomalous, eccentric, entirely foreign to, and, in many respects, at right angles with, the common law ; and the rule which required that several attachments levied on the same property, on the same day, should stand according to the

actual time of service, incorporated, very generally, into the statutes of the several States, is regarded as exceptional.—Drake on Attachment, § 261. It may not be necessary to add, that this anomaly is not now in force in this State, the statutes now providing that " all attachments lôdged upon the same day shall take rank together."—General Statutes, Code of Procedure, Ch. CXXII, § 255. It is ordered that the rule be discharged, and that the Sheriff of Richland County do apply the proceeds of the sale, returned by him, to the executions of Simon S. Bachman and Simon Benary, in ratable proportions.

Bachman appealed to this Court.

*Le Conte*, for appellant:

The single question presented is whether the Court will regard the fractions of a day in order to distinguish between the executions.

Admitting that a vigilant creditor may gain a preference simply by priority of action, it is the *fact* of such priority, and not its extent, as measured by time, that becomes important; and the Court will look to this *fact*, unless there is some positive principle of law which limits the inquiry.

There is no such principle of law. The rule that Courts take no notice of fractions of a day is never applied "in cases where there are conflicting rights, for the determination of which it is necessary to do so."—Broom Leg. Max, *143.

What was said by Johnson, J., in *Ex Parte Stagg*, was *obiter*. The *decision* in that case was that the fraction of a day should be regarded; and the *dictum* is deprived of all weight when the character of the authorities cited in its support, and the strange neglect of more direct and important authorities, is considered. Thus *Waterman* vs. *Haskin*, 11 Johns, 228, involved no question concerning the fraction of a day at all, nor was such question even considered by the Judge who pronounced the opinion; and the other decision referred to (Note in 4 Dall., 370), was by "the Court of Common Pleas of Philadelphia County," and has nothing about it to entitle it to the respect of this Court.

Lord Porchester's case is cited by Buller, J., in *Pugh* vs. *Robinson*, 1 Dunf. & East., 116, as a case concerning *judicial proceedings*, while the latter case holds that where, as here, the *act of a party* is in question, fractions of the day must be considered. In *Smallcombe*

vs. *Buckingham*, 1 Salk., 320, this distinction is applied by Lord Holt, C. J., to the case of two executions delivered on the same day, in which case there is a "*prius* and *posterius* in the same day;" and so in the text books, 2 Tidd. Pract., 1001; Lewell on Shffs., 199; and the current of English authorities is uniform in this direction; *Johnson* vs. *Smith*, 2 Burr., 962; 3 Burr., 1434; Ib., 1243; 3 Wils., 274. The American authorities settle the rule in the same way—*Lemon* vs. *Staats*, 1 Cowen, 592; *Marvin* vs. *Herrick*, 5 Wend., 109; *Clute* vs. *Clute*, 4 Denio, 243; 2 Watts, 303; Walker, 430; 1 How., (Miss.) 234.

If, then, the fractions of a day are noticed where the question is only of the lodgment of the execution, *a fortiori*, the rule applies when to the act of lodgment is added the specific appropriation of the property by levy.

But, since the Code, the proceeding under execution finds an exact analogy in the law of attachments, and the rule of this case should be sought there—"*ubi eadem ratio ibi idem jus.*" It is no objection that attachments are not of common law origin, for, as between writs executed on the same day, a discrimination is made by all authorities, not on the ground that the remedy is "at right angles" with the common law, but because the *common law* does admit of fractions of a day "where it is necessary to distinguish who has priority."—*Callahan* vs. *Hallowell*, 2 Bay, 8; *Brainard* vs. *Bushnell*, 11 Conn., *17, (a leading case); 4 Kent, 91, note; and cases cited in Drake on Attachments, § 258, *it seq.*

By Section 310 of the Code, it is the *act* of levy that gives priority. By this act a special property in the goods vests in the Sheriff for the purposes of the execution, and no subsequent act of the Sheriff can divest this right of property on pain of a second execution. And even if the *dictum* in *Ex Parte Stagg*, with respect to the lodgment of executions, is good law, "it is certainly otherwise in relation to vested rights acquired by operation of law or contract."—*Ex Parte Stagg*, 1 N. & McC., 406.

*Vigilantibus et non dormientibus jura subveniunt.*

*Qui prior est in tempore potior in jure.*

Where the rights of parties are in question, these are the maxims to be applied, and not *de minimis lex non curat.*—Broom Leg. Max., *143 and *352.

If the levies were made at the same instant, the distribution should be by equal division of the proceeds and not *pro rata.*—*Campbell* vs.

*Roger*, 1 Cowen, 215; 2 Tidd's Pract., *1001, note *a;* Drake on Attachments, § 260, and authorities cited in note, page 215.

*Melton*, Attorney General, contra, cited Broom Max., 143; 9 East., 154; Stark. Ev., 1406; 3 Cowen, 19; 3 Denio., 263; 1 Ld. Raym., 281; *Ex Parte Stagg*, 1 N. & McC., 405; P. L., 379; Cranch, 390; Code, §§ 316, 317, 355; *Williamson* vs. *Farrow*, 1 Bail., 611; Drake on Attach., §§ 4, 261; *Callahan* vs. *Hallowell*, 2 Bay, 8.

Feb. 2, 1874.   The opinion of the Court was delivered by

Moses, C. J.   There are two questions involved in this appeal: First, whether, in determining the lien of an execution upon personal property, regard is to be had to fractions of a day.   Second, if not, is the distribution of the fund from the same levy, made on two executions, on the same day, to be by equal divisions of the proceeds, and not *pro rata?*

While it is true that the common law, as a general rule, will not notice fractions of a day, unless to give effect to a right which would be defeated, but for their recognition, yet the exceptions by the English decisions in regard to their application to judicial proceedings have not been uniform.   While Mr. Tidd, in his second volume, at page 1001, refers to several authorities to sustain his text, that " as between *different* plaintiffs, if two writs of execution be delivered to the Sheriff on the same or different days, he ought to execute that first which was first delivered," in Lord Porchester's Case, Tr., 23, G. 3, cited by Justice Buller in *Pugh* vs. *Robinson*, 1 T. R., 157, it was held that where there were two judgments, both referring to the same day, priority of one could not be averred.

The mode and manner by which liens are to be created on real estate by judgment, and on personal property by executions, the extent of their binding efficacy, the effect of the disposition of levies under the latter, their operation, and all the incidents attaching to them as the medium through which satisfaction of the debts on which they issued is to be made, depend on the statutes of the State, and the construction which has been given to them by the Courts charged with their exposition.   There is probably not a State in the Union which has followed the course of the common law in regard to the enforcement of judgments and executions.   It would be almost impossible, from the nature of our government, and the condition of our people, to conform our practice to that

which prevails in England in respect to final process. Our comparative infancy, the abolition of all distinction between the liability of land and other property for the payment of debts, and various other considerations, preclude the application of all the rules, through the origin and enforcement of which the course of the English Courts has been established.

The doctrine of liens, through the writ of *fi. fa.*, prevailing in South Carolina, owes its origin to the 16th Section of the Statute of Frauds, 2 Stat., 528, and the 37th Section of the Act of 1785, 7 Stat., 229. As to the binding effect of the writ, the language of both is almost identical. They both require the Sheriff, or other officer to whom it may be delivered, to endorse on the back of it the day of the month and year of its receipt. It would thus appear, that while regard was to be had to the *day*, as fixing the time from which its binding efficacy was to begin, all reference to the particular hour at which it was lodged, as the period from which any rights under it were to arise, was precluded. The endorsement of the day was to afford evidence of the time to which its binding effect was to relate; and if any advantage as to priority, through the hour of lodgment, was to be attained, the statutes failed in a material requisition in not directing the officer to note it on the process.

In *Ex Parte Stagg*, 1 N. & McC., 405, it was said that the law will not allow fractions of a day to affect legal proceedings, and that, of two executions of the same day, neither shall have preference. Whether this was a mere *dictum*, or the recognition of a principle accepted and expressed by the whole Court, for over fifty years the practice has conformed to it in every particular, and we are bound to enforce it, unless something may be found in the Code of Procedure, lately adopted, which compels a departure.

To change a practice in judicial proceedings which has been accepted and followed for over half a century, positive enactment must be shown, or such action of the legislative authority as leaves no doubt of its intended purpose. Inferences from doubtful implications will not suffice.

The 316th Section of the Code only changes the *act* which is to give binding efficacy to the execution. It is no longer to follow from the mere lodgment with the Sheriff, but from the actual "levy" or "attachment." The succeeding Section preserves "the existing provisions of law, not in conflict with this Chapter re-

lating to executions and their incidents, the property liable to sale on execution, the sale thereof, the powers and rights of officers, their duties thereon," &c.

No aid is derived to the argument on behalf of the motion from the use of the word "attachment" in the same connection. It was not intended to apply to what was formerly known in the State as a writ of foreign attachment, now provided for by the fourth Chapter, Title VII, of the Code, Gen. Stat., 622. It cannot be taken in the connection in which it is found in any other sense than as synonymous with "levy." If the term is to be there understood as referring to the process provided against absent debtors who have property subject to the jurisdiction of the Court, its lien now "ranks," not from the hour, but "from the day" when it is lodged with the Sheriff, (Gen. Stats., 624.) Before the adoption of the Code the lien of the *fi. fa.* was referred to the entry in the Sheriff's office—now it takes effect from the levy; but all the other incidents attaching to or consequent upon it, except as directly, or by irresistible inference, provided by the Code remain unchanged.

Holding that the levy under each of the two executions, on the same day, prevented a preference or priority in favor of that on which it was first made, we are not disposed to change the long established rule of the Court, that the proceeds of the levies must be divided between the two executions in ratable proportions. Doubtless a different practice may obtain in New York, and probably in some other of the States, by which the funds would be required to be equally divided between them, regarding the levies as made at the same time. We are not disposed to depart from the course so long adopted, and followed by our Courts, accepted by the bar, and understood by the community, and not requiring any change, as is manifest by their long acquiescence without complaint in the practice as it exists. The motion is dismissed.

*Wright*, A. J., and *Willard*, A. J., concurred.